UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KATHLEEN A. BULL,                      )
     *Plaintiff,*                    )
                                   )
     *vs.*                          )     1:10-cv-00878-JMS-TAB
                                   )
BOARD OF TRUSTEES OF BALL STATE        )
UNIVERSITY, JO ANN M. GORA, THOMAS     )
COLLINS, PATRICK A. QUINN,             )
     *Defendants.*                  )

## ORDER

Presently pending before the Court is Defendants' Motion for Summary Judgment, [dkt. 60], which the Court **GRANTS in part and DENIES in part** for the reasons that follow.

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Pro. 56(c)(1)(B). Affidavits or declarations must be

made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Pro. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003).[1] Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Id*. at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999). And when evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex*, 477 U.S. at 330.

In a separate order issued today, the Court has ruled on the parties' pending motions to exclude the testimony of various proffered expert witnesses. [Dkt. 143.] Accordingly, in

---

[1] The Court notes that in several circumstances, its review was hampered by non-compliance with its Procedures and Practices [dkt. 55 at 2] which require a party to submit the three pages surrounding cited deposition excerpts to ensure proper context. Here the cited passages within depositions were provided without the requisite surrounding pages, making review difficult. [*See, e,g,* dkt. 75-3 at 37, exhibit 75-2 at 49-51.]

considering Defendants' motion for summary judgment, the Court will consider only the evidence it has deemed admissible.

## II.
### FACTS NOT IN DISPUTE

Ms. Bull began her employment with Ball State University ("BSU") as the head women's tennis coach in 1988, a position she held for twenty-one years. [Dkt. 74-6 at 2.] During her tenure as head coach, Ms. Bull had a successful and celebrated career. [*Id.*] She was also an outspoken and persistent advocate for gender equity in athletics under Title IX, regularly complaining to university officials and administrators about gender-related disparities in the treatment of student athletes and coaches. [*Id.* at 3.]

In May 2006, after the dismissal of another women's head coach who advocated gender equity, BSU Associate Athletic Director Patrick Quinn told another BSU administrator that "Kathy Bull should watch out or she will 'be next.'" [*Id.* at 4.] Ms. Bull immediately reported the comment to BSU Athletic Director Thomas Collins. [*Id.*] No investigation or corrective action was taken. [*Id.*]

In April 2008, BSU President Jo Ann Gora was notified that an anonymous complaint had been filed with the Office of Civil Rights ("OCR"). [*Id.*] The next month, Ms. Bull received her first negative performance evaluation. [*Id.*] In June 2008, Ms. Bull filed discrimination complaints with BSU against Mr. Collins and Mr. Quinn for the threat that "she will be next." [*Id.*] In July 2008, BSU denied the complaints. [*Id.*] In August 2008, Ms. Bull filed a complaint with OCR about her May performance review and the dismissal of her discrimination complaints. [*Id.*] In April 2009, Ms. Bull wrote a letter to the BSU Athletics Committee chair, signed by eight other head coaches, "explain[ing] that there were still serious problems with gender equity and Title IX compliance in [the BSU] athletic department." [*Id.* at 5.] In late July

2009, BSU renewed Ms. Bull's one-year employment contract, and her renewal letter described her performance as "exemplary." [Dkt. 75-3 at 17.]

In September 2009, Ms. Bull self-reported to Mr. Quinn a possible violation of NCAA rules arising from conducting a timed run for her team prior to the commencement of the 2009-10 season. [Dkt. 72 at 15.] Mr. Quinn subsequently asked for Ms. Bull's practice log from the first week of the season to determine whether the timed run would cause her to exceed the limit for weekly practice hours. [Dkt. 72 at 19.] Ms. Bull then texted three student-athletes the following message: "Need a favor. The first week of practice, would u 3 be comfortable saying that we did not practice Tues and Thursday? I know we had a meeting Tuesday but it did not count. The run has to be counted now." [Dkt. 63-1 at 2.]

Mr. Quinn, along with the NCAA Assistant Director of Enforcement, NCAA investigators and outside counsel, subsequently interviewed Ms. Bull and the women's tennis team members. [Dkt.72 at 15-16.] During the interviews, one of Ms. Bull's student-athletes was asked whether she had been asked to be untruthful in reporting her hours. [Dkt. 62-43 at 5.] She answered "yes," and described Ms. Bull's text message to her from the previous day. [*Id.* at 5-6] Ms. Bull later admitted that she had sent the text messages to the three student-athletes asking them to "misrepresent" hours on the weekly log, and the other two student-athletes later confirmed that they had also received the text message from Ms. Bull. [Dkts. 63-10 at 6; 64-15 at 3-4.] Later that month, while Ms. Bull's team was pending reinstatement with the NCAA, Ms. Bull sent the following text message to the student-athlete captain: "How about u and Hayley running a practice tomorrow?" [Dkts. 63-1 at 2; 74-6 at 6.]

In October 2009, Mr. Quinn self-reported to the NCAA[2] the events of the preceding month, detailing the NCAA rules Ms. Bull allegedly violated and providing supporting detail and evidence for each violation.  [Dkts. 64-6; 64-7.]  On October 22, Mr. Collins submitted a letter to Dr. Gora asking her to initiate termination proceedings against Ms. Bull.  [Dkt. 64-9.]

Ms. Bull was notified of the initiation of termination proceedings and her entitlement to a hearing.  [Dkts. 62-3 at 3-5; 62-4 at 1.]  During a hearing before a committee of other BSU faculty, Ms. Bull presented documentary evidence and written argument, and was represented by counsel.  [Dkt. 62-4 at 1.]  On February 17, 2010, the BSU Hearing Committee Chair issued its finding and recommendation in support of terminating Ms. Bull's employment.  [*See* dkt. 64-12.] The committee specifically found that "all three of the athletes believed [the text] was a request to misrepresent practice activities" and that Ms. Bull's conduct

> was a violation of NCAA Bylaw 10.01.1 requiring her to act with honesty and sportsmanship at all times, and the NCAA Constitution § 2.2.5 requiring each member institution to insure that its coaches exhibit fairness, openness and honesty in their relationships with student athletes.

[Dkt. 64-12 at 4.]

On March 5, 2010, Dr. Gora recommended that the Board of Trustees adopt the hearing committee's findings and recommendations, which it did on March 19, 2010.  [*See* Dkt. 64 at 11.]

During Dr. Gora's tenure as BSU President and Mr. Collins' tenure as athletic director, head coaches Greg Beals and Ronny Thompson were also disciplined for alleged misconduct.

---

[2] Like Ms. Bull, who was an NCAA coach, BSU was required to self-report violations to the NCAA, and the university was already on probation with the NCAA at the time these events took place.

Mr. Beals was issued a reprimand for his conduct involving an extramarital affair.[3]  [Dkt. 75-3 at 37.]  Mr. Thompson was also issued a reprimand after he committed five NCAA violations during his first year as a Division I coach, one of which was a Rule 10.1 violation, the same rule Ms. Bull was charged with violating.  [*Id*. at 11-12.]  When asked why she recommended terminating Ms. Bull's employment following an alleged ethical violation, but not Mr. Thompson's, Dr. Gora answered, "His violations were described as secondary by the NCAA, and he did not ask students to lie."  [*Id*. at 12.]

### III.
#### DISCUSSION

Ms. Bull initially sued Dr. Gora, Mr. Collin, Mr. Quinn, and the Board of Trustees of BSU, alleging constitutional deprivations under the First and Fourteenth Amendment, gender discrimination and retaliation under Title IX, and state-law claims of defamation and breach of contract.  Following this Court's order granting Defendants' motion for partial dismissal, what remains of Ms. Bull's Complaint are  the following claims: against the Board of Trustees of Ball State University. Counts I and IV, which together state Ms. Bull's Title IX retaliation claim; against Dr. Jo Ann Gora, Mr. Thomas Collins, and Mr. Patrick Quinn in their individual capacities Count II, a state law defamation claim, Count V, a § 1983 First Amendment claim, and Count VI, a § 1983 Fourteenth Amendment claim.

**A.  Title IX Retaliation Claim against BSU Board of Trustees**

      **1.  Has Ms. Bull Established a Prima Facie Case for Retaliation under Title IX?**

An employee alleging claims under Title IX may establish a prima facie case under the indirect or the direct methods of proof, or a combination of the two.  *Good v. Univ. of Chicago*,

---

[3] The actual letter of reprimand was not submitted to the Court, and if there were any other bases for the reprimand, the Court was unable to determine what they were.

2012 U.S. App. LEXIS 5070 (7th Cir. 2012) (internal citation omitted).  While direct evidence "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus," *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003), circumstantial evidence may also suffice under the direct method when a plaintiff "pieces of evidence none conclusive in itself but together composing a convincing mosaic" of retaliation. *Zafar Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 527 (7th Cir. 2008) (internal citations omitted).  The Seventh Circuit has outlined three types of circumstantial evidence that may be used to form such a mosaic:  (1) suspicious timing, ambiguous statements, and behavior toward other employees from which an inference of retaliatory intent may be drawn; (2) evidence that similarly situated employees received systematically better treatment; and (3) evidence that the plaintiff did not deserve the adverse employment action and that the employer's stated reason is a mere pretext for retaliation.  *Volovsek v. Wisconsin Dept. of Agr., Trade, and Consumer Protection*, 344 F.3d 680, 689-90 (7th Cir. 2003).

To establish a prima facie case of retaliation using the direct method, Ms. Bull must demonstrate: (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two.  *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008).  Defendants concede the first and second parts of the test, that Ms. Bull engaged in protected activity and that her termination was an adverse employment action.  [Dkt. 61 at 24.]   The Court will consider, then, whether Ms. Bull has provided sufficient evidence to support a causal connection between her protected activities and her termination.

Ms. Bull contends that the causal connection is demonstrated by (1) "the misrepresentations offered by Defendants for their actions, and (b) by the proximity in time

between Plaintiff's protected activity and the adverse action."  [Dkt. 72 at 31.]   Ms. Bull's first-listed type of evidence appears to fall under the third category of circumstantial evidence: supporting the inference that BSU's proffered legitimate reason for Ms. Bull's termination was a pretext for retaliation.

The Seventh Circuit has noted that the evidence required under the third category of the direct method is "substantially the same" as that required under the indirect method.  *Huff v. UARCO Inc.*, 122 F.3d at 374, 380 (7th Cir. 1997); *Volovsek*, 344 F.3d at 690.   Under the indirect method, a plaintiff must provide evidence of the following:

> (1) after lodging the complaint about discrimination,
> (2) only [she], and not similarly situated employees who did not complain, was
> (3) subjected to an adverse employment action even though
> (4) [she] was performing [her] job in a satisfactory manner.

*Hancock v. Potter*, 531 F.3d 474, 480 (7th Cir. 2008) (internal citations omitted).

Again, there is no dispute that Ms. Bull lodged a complaint about discrimination and later suffered the adverse employment action of termination.   At issue is whether Ms. Bull was meeting BSU's legitimate job expectation and whether similarly situated employees who did not complain of discrimination were spared termination.   The Court will consider only comparator evidence during the tenure of Dr. Gora and Mr. Collins, the relevant decision makers here.

Ms. Bull maintains that prior to the incident for which she was fired, she had been performing her job satisfactorily, as evidenced by positive performance reviews and the renewal of her contract in July 2009.  [Dkt. 72 at 33-34.]  The Seventh Circuit has recognized that in cases, such as this one, in which the plaintiff is fired for allegedly not meeting an employer's legitimate expectations, the prima facie analysis collapses into the pretext analysis.  *See Roberts v. Separators, Inc.*, 172 F.3d 448, 451 (7th Cir. 1999) (instructing that the legitimate expectations analysis often "dovetails" with that of the pretext analysis).   Accordingly, the Court will collapse

the two inquiries, recognizing that under both the direct and the indirect methods of proof, then, the Court's inquiry boils down to the fundamental question of whether Ms. Bull can point to a similarly situated employee who engaged in similarly serious misconduct, but who was not terminated.

### 2.   Has Ms. Bull Identified a Relevant Comparator?

If Ms. Bull can establish a prima facie case for retaliation, the burden shifts to BSU to present a legitimate non-retaliatory reason for her termination.  *See Everroad v. Scott Truck Systems, Inc*., 604 F.3d 471, 477 (7th Cir. 2010).  BSU has offered the legitimate reason that Dr. Gora believed Ms. Bull had asked students to lie during the investigation of a possible NCAA violation and had likely committed, among other NCAA violations, an ethical violation of NCAA bylaws.  Ms. Bull now bears the burden to show that BSU's given reason was a pretext for unlawful retaliation.  *Lucas v. PyraMax Bank, FSB*, 539 F.3d 661, 666 (7th Cir. 2008).

A plaintiff making a showing of discrimination or retaliation must show that similarly situated colleagues outside the protected class were treated more favorably than she was.  *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012).  The similarly-situated requirement is crucial, because "without it a plaintiff would only have to point to one . . . employee who was treated better than he . . . (which) would be meaningless, especially with respect to large corporations . . . ."  *Radue v. Kimberly-Clark*, 219 F.3d 612, 619 (7th Cir. 2000).  The Seventh Circuit has recently described the similarly-situated inquiry as "flexible, common-sense, and factual ..., ask[ing], essentially, are there enough common features between the individuals to allow a meaningful comparison."  *Coleman*, 667 F.3d at 841 (internal citation and quotation marks omitted).  While similarly situated employees must be "directly comparable to the plaintiff in all material respects, [] they need not be identical in every conceivable way."  *Id*. at 847 (internal citation and quotation marks omitted).  So long as any differences between Ms. Bull

9

and any would-be comparators "are not so significant that they render the comparison effectively useless, the similarly situated requirement is satisfied." *Id*. (internal citation and quotation marks omitted).  In cases such as this, "[w]here the plaintiff argues that an employer's discipline is meted out in an uneven manner, the similarly-situated inquiry dovetails with the pretext question. Evidence that the employer selectively enforced a company policy against [a person who engaged in protected conduct] but not [a person who didn't] would go to both the fourth prong of the prima facie case and the pretext analysis." *Id.*  at 858

Here, the only actionable adverse employment action that Ms. Bull cites is her allegedly wrongful termination.  [*See* dkt. 1.]  Thus, for her claim to survive, she would have to show that similarly situated employees were not terminated.  *See Radue*, 219 F.3d at 619.

Ms. Bull points to two other university coaches, Greg Beals and Ronny Thompson, as similarly situated colleagues who may be used as comparators to support her contention that BSU's proffered reason is a pretext for retaliation.  [Dkt. 72 at 28-29.]  Ms. Bull contends that Mr. Beals and Mr. Thompson engaged in misconduct of similar seriousness to her misconduct, but were reprimanded rather than terminated.  [*Id*.]

With respect to Mr. Beals, the Court finds that even under the forgiving standard set forth in *Coleman*, he is not a similarly situated colleague for the purpose of pretext analysis.  Ms. Bull argues that Mr. Beals is a valid comparator because he "did what [she] was accused of but never did: submitting intentionally false practice logs," and because Mr. Beals had an alleged extramarital affair, [dkt. 72 at 29].

Unfortunately, Plaintiffs initial argument is unsupported by the record evidence.  The deposition testimony of Mr. Collins does not support that Mr. Beals was ever disciplined for submitting a false practice log, though he did commit other NCAA violations that are not similar

to Ms. Bull's.  The deposition testimony of Terri Laux does not establish that Mr. Beals was disciplined for such a violation either.  Because of deposition excerpts that are incomplete, the record establishes that Mr. Beals was reprimanded, but whether the reprimand includes NCAA violations is unclear.  [*Id*.; dkt. 75-2 at 51, 75-3 at 37.] He certainly was reprimanded for his extramarital affair.

Ms. Bull contends Mr. Beals misconduct was sufficiently similar and thus is sufficient to defeat summary judgment.  The Court disagrees.  There is no evidence that Mr. Beals committed a practice log violation or a violation of NCAA Rule 10.1(d0.  The undisputed extramarital affair, though morally deplorable, does not implicate an NCAA violation.  The Court therefore deems Mr. Beals an improper comparator for establishing pretext.

The Court agrees with Ms. Bull, however, that Mr. Thompson, another BSU coach who was found to have violated NCAA bylaws and received a letter of reprimand rather than termination, is a proper comparator for pretext analysis.  Ms. Bull is correct that because Mr. Thompson was also found to have violated of Rule 10.1, and was believed to have lied to NCAA investigators, [dkt. 72 at 28], his misconduct is of similar seriousness to hers.  [*Id*.]  Although a jury may well readily find that a coach's personal dishonesty is distinguishable from a coach's enlistment of student-athletes to be dishonest — a distinction Dr. Gora has highlighted as well, [*see* dkt. 61 at 25] — the Court finds that because both Ms. Bull and Mr. Thompson were implicated under NCAA Rule 10.1, they are similar enough to allow for meaningful comparison, *Coleman*, 667 F.3d at 841.  Because the distinction between them cannot be said to "render the comparison effectively useless, the similarly situated requirement is satisfied."  *Id*. at 847.  Mr. Thompson therefore is a suitable comparator for the purpose of supporting Ms. Bull's arguments that she has identified admissible evidence to support both a prima facie showing and that BSU's

proffered non-retaliatory reason for her termination was pretextual. *Id.* It is for the jury to decide whether Ms. Bull's termination was in retaliation for her protected activity.

By showing that a similarly situated colleague who did not engage in statutorily protected conduct suffered a lesser discipline than termination, Ms. Bull has provided admissible evidence to rebut BSU's proffered non-retaliatory reason for terminating her employment. Accordingly, the Court **DENIES** BSU's motion for summary judgment on Ms. Bull's Title IX claim. [Dkt. 60.]

### B.  Section 1983 Claims Against Individually Named Defendants

In addition to her Title IX claim against BSU, Ms. Bull has brought § 1983 claims against Dr. Gora, Mr. Collin, and Mr. Quinn for alleged violations of the First and Fourteenth Amendments.

### 1.  First Amendment Claim

Ms. Bull's first § 1983 claim against the named individuals is for alleged violation of the First Amendment.  Specifically, Ms. Bull claims that Defendants terminated her employment because she spoke out on "matters of public concern."  [Dkt. 1 at 15].  While BSU has "conceded for purposes of summary judgment that gender equity and Title IX are matters of public concern and that vocally advocating for them is activity protected by the First Amendment," [dkt. 61 at 30 (citing *Pickering v. Bd. Of Educ. Of Township High Sch. Dist. 205*, 391 U.S. 563, 568 (1968))], it has incorporated its position from its Title IX discussion in arguing that Ms. Bull has failed to show evidence of pretext.[4]

---

[4] Defendants do not argue that under *Garcetti v. Ceballos*, 547 U.S. 410 (2006), they can avoid potential First Amendment liability, nor are they arguing that they are entitled to qualified immunity. Unlike in *Hernandez v. Cook County*, 634 F.3d 906 (7th Cir. 2011), where a finding of waiver was reversed in light of defendants' inclusion, albeit brief, of the argument that they were entitled to qualified immunity, no such argument has been raised here, and the Court finds that argument waived.

The individual defendants first challenge Ms. Bull's § 1983 claims by arguing that because they were acting within the scope of their employment, they are acting in their official capacities. Because only individual capacity claims remain following the Court's dismissal of any official capacity claims, they contend the § 1983 claim should be dismissed. But defendants misapprehend the meaning of a claim alleging a constitutional violation in an individual capacity. Where a plaintiff alleges, like Ms. Bull has here, tortious conduct of individuals acting under color of state law, the defendants have been sued in their individual capacities. *Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000).

To avoid summary judgment on a § 1983 claim against Dr. Gora, Mr. Collins, and Mr. Quinn in their individual capacities, Ms. Bull must provide evidence that Dr. Gora, Mr. Quinn, and Mr. Collins each personally participated in the alleged constitutional deprivation. *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1998). Personal responsibility exists if the conduct causing a constitutional deprivation occurred at the defendant's direction or at his knowledge or consent. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). A burden-shifting analysis similar to that undertaken in the Title IX discussion above is employed in the free speech context as well. Once Ms. Bull has established a prima facie case, her burden is to present evidence that Ball State's explanation of her discharge was a pretext for retaliation.

The Defendants have only argued for summary judgment on the basis that Ms. Bull cannot show pretext. As discussed above, Ms. Bull has offered admissible evidence to rebut the Defendant's proffered explanation for terminating her employment. Therefore, for the same reasons Ms. Bull's Title IX claim cannot be resolved on summary judgment, her First Amendment claim must be tried to a jury.

### 2.  Fourteenth Amendment Claim

Ms Bull has also brought individual-capacity § 1983 claims against Dr. Gora, Mr. Quinn, and Mr. Collins for an alleged violation of the Fourteenth Amendment.  Ms. Bull contends that the named individuals, acting in their individual capacities, "failed to comply with [university] policies and procedures" regarding her termination and denied her "a reasonable chance of a fair and successful outcome by conducting its own investigation and employment termination proceedings without due process of law."  [Dkt. 1 ¶¶ 71-73].  In support of summary judgment on this claim, Defendants argue that Ms. Bull was in fact afforded more process than that to which she was entitled.  [Dkt. 61 at 31-32.]

Prior to termination, a state employee with a property interest in her job has a right to "notice" and a meaningful opportunity to be heard.  *Pugel v. Trustees of the Univ. of Illinois*, 378 F.3d 659, 663 (7th Cir. 2004); *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 313 (1950).  "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement."  *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985).

Ms. Bull does not address the legal standard for due process.  Indeed, Ms. Bull's entire argument in response to Defendants' motion for summary judgment consists of the following two sentences:

> Moreover, the facts set forth by Plaintiff in support of her Title IX retaliation claim also support her due process claim.  Defendants are not entitled to summary judgment.

[Dkt. 72 at 36.]  As Defendants correctly point out, however, there is no dispute that Ms. Bull was notified by BSU of the charges against her and that BSU held a pre-termination hearing during which Ms. Bull was represented by counsel and was entitled to challenge the composition of the committee, to present witness testimony, and to enter documents into evidence.  [Dkts. 94 at 9 (citing dkt. 1).]

Ms. Bull has not developed a cogent argument in response to Defendants' contention that she was afforded not only due process, but process beyond that to which she was entitled. Instead, she appears to agree with Defendants' contention, referring to her termination process elsewhere in her brief as "star chamber proceedings [which] were wholly unnecessary." [Dkt. 72 at 35.]  Because the undisputed facts show that Defendants provided Ms. Bull with both notice and an opportunity to be heard, and Ms. Bull has offered no admissible evidence that Dr. Gora, Mr. Collins, and Mr. Quinn denied her due process while acting in their individual capacities, she cannot defeat their motion for summary judgment on her § 1983 Fourteenth Amendment claim.  The Court therefore finds that Dr. Gora, Mr. Quinn, and Mr. Collins are entitled to judgment as a matter of law on that claim.

### C.  State-Law Defamation Claims Against Individually Named Defendants

Ms. Bull has also alleged individual-capacity[5] claims of defamation against Dr. Gora, Mr. Quinn, and Mr. Collins under Indiana state law.  Ms. Bull alleges that these individuals defamed her by telling the press and faculty that she was fired.  [Dkt. 1 at 12-13.]

Under Indiana defamation law, a plaintiff must prove that: (1) what the defendant said about the plaintiff was false; and (2) the defendant made his or her comment with "actual malice."  *Kitco, Inc. v. Corporation for General Trade*, 706 N.E.2d 581, 587-88 (Ind. Ct. App. 1999).  Actual malice is defined as a defamatory statement that is made "with knowledge that it was false or with reckless disregard of whether it was false or not."  *Journal-Gazette Company, Inc. v. Bandidio's, Inc.*, 712 N.E.2d 226, 456 (Ind. 1999) (internal quotation omitted).  Indiana

---

[5] The individual-capacity label with respect to the Ms. Bull's state law claims is misplaced.  To the extent the claim was so pleaded in order to avoid the application of the Indiana Tort Claims Act, such attempt fails as a matter of law.  The undisputed evidence shows that Ms. Gora, Mr. Collins, and Mr. Quinn were at all times acting within the scope of their employment.

law requires "clear and convincing evidence" of actual malice, and "substantial truth" is an absolute defense to a claim of defamation.  *Id.* at 456-57.

The Indiana Tort Claims Act ("ITCA"), Ind. Code §§ 34-13-3-3, provides immunity to governmental employees "acting within the scope of the employee's employment" in certain situations where a common law duty of care might otherwise exist.  The ITCA's grant of immunity to governmental employees includes actions stemming from "[t]he initiation of a judicial or an administrative proceeding," and "[t]he performance of a discretionary function." Ind. Code § 34-13-3-3 (6)-(7).

Here, Ms. Bull's state-law defamation claims against Dr. Gora, Mr. Collins, and Mr. Quinn are barred by the ITCA.  Dr. Gora, Mr. Collins, and Mr. Quinn, in issuing statements to the media and Ball State faculty, were performing "discretionary functions" for the purposes of Indiana state law.  *See E.L.C. Electric, Inc. v. Indiana Department of Labor*, 825 N.E.2d 16, 23 (Ind. Ct. App. 2005) (affirming the trial court's grant of summary judgment because the "the discretionary function of informing the public" entitled the state defendant to immunity from defamation claims).  *See also Sims v. Barnes*, 689 N.E.2d 734, 737 (Ind. Ct. App. 1997) (characterizing a prosecutor's "duty to inform the public" as a "discretionary function [which] would fall within the absolute immunity granted by the Indiana Torts Claims Act.") (internal citations omitted).  Dr. Gora, Mr. Collins, and Mr. Quinn are therefore immune to Ms. Bull's individual-capacity defamation claims.

Even if the ITCA did not provide immunity to Dr. Gora, Mr. Collins, and Mr. Quinn, they would still be entitled to summary judgment because Ms. Bull has failed to provide admissible evidence sufficient to support her claim.  *See Schacht*, 175 F.3d at 504 (7th Cir. 1999) (holding that without a factual basis to support his claim, plaintiff could not prevent summary

16

judgment).  In fact, nowhere in Ms. Bull's response brief has she even addressed the standard for defamation in Indiana, and she has likewise failed to cite evidence supporting each of the required elements.  As the Court need only consider the cited materials in ruling on a motion for summary judgment, Fed. R. Civ. Pro. 56(c)(3), the Court does not find that Ms. Bull has provided sufficient admissible evidence to defeat Defendants' motion for summary judgment on her defamation claim.  *See Johnson*, 325 F.3d at 898 ("[The Seventh Circuit Court of Appeals has] repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them.").

Ms. Bull has offered no evidence that Dr. Gora, Mr. Quinn, and Mr. Collins said anything false about her with actual malice.  Neither has she shown that Dr. Gora, Mr. Collins, and Mr. Quinn were acting outside the scope of their employment when they made the statements they did, a showing which demands more than a perfunctory and conclusory assertion.  *See Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 452-54 (Ind. Ct. App. 2000) ( "If employees were easily declared outside the scope of their employment, the threat 'to their independent judgment necessary to carry out their duties[]' ... would be greater.").  Because Ms. Bull has offered no admissible evidence that Dr. Gora, Mr. Collins, and Mr. Quinn made false statements with actual malice, acting outside the scope of their employment, her defamation claim cannot survive their motion for summary judgment.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendants' Motion for Summary Judgment, [dkt. 60].  Defendants are entitled to judgment as a matter of law on Ms. Bull's § 1983 Fourteenth Amendment and state-law defamation claims. However, because Ms. Bull has offered admissible evidence of a sufficiently similar comparator

who received a lesser sanction for dishonest conduct to rebut BSU's proffered, legitimate explanation for her termination, her Title IX and § 1983 First Amendment claims survive Defendants' motion.  Counts I, IV, and V will be tried to a jury.

05/02/2012

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**<u>Distribution via ECF only</u>:**

Lester H. Cohen
DEFUR VORAN LLP
lhcohen@charter.net

Baine P. Kerr
HUTCHINSON BLACK and COOK, LLC.
kerr@hbcboulder.com

Barry A. Macey
MACEY SWANSON AND ALLMAN
bmacey@maceylaw.com

Jeffrey A. Macey
MACEY SWANSON & ALLMAN
jmacey@maceylaw.com

Shawn A. Neal
DE FUR, VORAN, HANLEY, RADCLIFF & REED, LLP
sneal@defur.com

Marissa W. Pollick
ATTORNEY AT LAW
mpollick@umich.edu

Scott E. Shockley
DEFUR VORAN LLP
sshockley@defur.com

James Russell Williams
DEFUR VORAN LLP
jwilliams@defur.com